UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HENRY GONZALEZ,                )        NO. CV 15-1167 AGR
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )        MEMORANDUM OPINION AND
CAROLYN W. COLVIN,             )        ORDER
Commissioner of Social Security,       )
                               )
          Defendant.           )
_____)

Plaintiff Henry Gonzalez filed this action on February 18, 2015.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 7, 14.)  On October 19, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court  affirms the decision of the Commissioner.

.

I.

## PROCEDURAL BACKGROUND

In December 2011, Gonzalez filed applications for supplemental security income and disability insurance benefits. Administrative Record ("AR") 17. The applications were denied initially. AR 17, 91-92. Gonzalez requested a hearing before an Administrative Law Judge ("ALJ"). AR 98. On February 12, 2013, the ALJ conducted a hearing at which Gonzalez and a vocational expert ("VE") testified. AR 674-718. At the hearing, the onset date was amended to December 31, 2010. AR 17, 679. On August 16, 2013, the ALJ conducted a supplemental hearing at which Gonzalez and a VE testified. AR 35-52. On October 25, 2013, the ALJ issued a decision denying benefits. AR 14-28. On December 17, 2014, the Appeals Council denied the request for review. AR 1-3. This action followed.

II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

III.

## DISCUSSION

### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.   The ALJ's Findings

The ALJ found that Gonzalez met the insured status requirements through December 31, 2014.  AR 19.  Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Gonzalez has the severe impairments of lumbar sprain/strain; cervical sprain/strain; lumbar radiculopathy; right ankle tendonitis; history of left shoulder fracture; status post right shoulder dislocation; asthma; hypertension; obesity; mood disorder, not otherwise specified; major depressive disorder; and anxiety disorder, not otherwise specified.  AR 19.  He has the residual functional capacity ("RFC") to perform light work except that he is precluded from climbing and balancing on uneven, narrow, slippery or erratic moving surfaces; he can occasionally balance, stoop, kneel, crouch and crawl; he should avoid exposure to dusts, fumes and extreme cold/heat; he is limited to occasional exposure to humidity and wetness; he is precluded from reaching or lifting above the shoulders with the bilateral upper extremities; he is limited to

_____

[1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work.  *Lounsburry*, 468 F.3d at 1114.

3

1  frequent exposure to unprotected heights, moving mechanical parts and

2  operating a motor vehicle; and he is limited to unskilled simple repetitive tasks

3  with only incidental work-related interaction with coworkers and supervisors, and

4  no interaction with the general public.  AR 20-21.

5      The ALJ found that Gonzalez is unable to perform any past relevant work,

6  but there are jobs that exist in significant numbers in the national economy that

7  he can perform such as packager, assembler and electronics worker.  AR 26-27.

8      **C.    Credibility**

9      "To determine whether a claimant's testimony regarding subjective pain or

10  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter*

11  *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must

12  determine whether the claimant has presented objective medical evidence of an

13  underlying impairment 'which could reasonably be expected to produce the pain

14  or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

15  (9th Cir. 1991) (en banc)).

16      Second, when an ALJ concludes that a claimant is not malingering and has

17  satisfied the first step, "the ALJ may 'reject the claimant's testimony about the

18  severity of her symptoms only by offering specific, clear and convincing reasons

19  for doing so.'" *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015) (citation

20  omitted)**,** *amended* 2015 WL 6684997 (Nov. 3, 2015); *Burrell v. Colvin*, 775 F.3d

21  1133, 1136-37 (9th Cir. 2014).  "A finding that a claimant's testimony is not

22  credible 'must be sufficiently specific to allow a reviewing court to conclude the

23  adjudicator rejected the claimant's testimony on permissible grounds and did not

24  arbitrarily discredit a claimant's testimony regarding pain.'"  *Brown-Hunter*, 798

25  F.3d at 755 (citation omitted).  "'General findings are insufficient; rather, the ALJ

26  must identify what testimony is not credible and what evidence undermines the

27  claimant's complaints.'"  *Id.* (citation omitted).  In weighing credibility, the ALJ may

28  consider factors including the claimant's daily activities; and "ordinary techniques

1    of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling

2    ("SSR") 88-13) (quotation marks omitted).[2]   The ALJ may consider:  (a)

3    inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies

4    between a claimant's statements and activities; (c) exaggerated complaints; and

5    (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947,

6    958-59 (9th Cir. 2002).

7         The ALJ found that Gonzalez's statements were not credible to the extent

8    they were inconsistent with the residual functional capacity.  AR 22.  The ALJ

9    relied on three reasons: (1) lack of support in the objective medical record; (2)

10   minimal mental health treatment; and (3) daily activities inconsistent with the

11   degree of disability alleged.  AR 22.

12        The ALJ may properly consider lack of objective medical evidence

13   supporting the degree of limitation, but it cannot form the sole basis for

14   discounting a claimant's credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

15   Cir. 2005).

16        The ALJ's finding that the medical evidence does not support the degree of

17   Gonzalez's allegations is supported by substantial evidence.  The ALJ correctly

18   noted that no medical opinion suggests mental functional limitations greater than

19   the RFC assessment.  AR 26.  In December 2011, around the time he applied for

20   benefits, Gonzalez reported that he has had anxiety for the past 10 years and

21   asked to see a therapist.  He presented with a normal affect.  He was prescribed

22   Ativan and referred to a psychiatrist.  AR 24, 525-26.  In March 2012, Gonzalez

23   went to a mental health center.  He reported that he had lost his job two years

24   earlier, had been unable to find employment and felt he could not support his

25

26        [2]  Social Security rulings do not have the force of law.  Nevertheless, they
27   "constitute Social Security Administration interpretations of the statute it
     administers and of its own regulations," and are given deference "unless they are
28   plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
     F.2d 1453, 1457 (9th Cir. 1989).

1
2
3
4
5
6
7
8
9

family.  He felt anxious, claustrophobic and irritable with racing thoughts, feelings of dread, isolative behavior and poor concentration.  AR 24, 402.  He reported past substance use/abuse including amphetamines and cocaine or crack eight months ago, and marijuana four months ago.  AR 403.  Gonzalez had normal eye contact and speech, unimpaired memory, average fund of knowledge, no perceptual, thought process or thought content disturbances, and intact judgment.  His mood was anxious and tearful, his affect was worried and sad, and his concentration was described as "rumination."  AR 24, 404.  His Global Assessment of Functioning (GAF) assessment was 48.[3]  AR 24, 404.

10
11
12
13
14
15
16
17
18
19
20
21

In the psychiatric evaluation in April 2012, Gonzalez claimed to be bipolar but had no manic episodes.  He "'sometimes begins drinking and can't stop'" with "'occasional memory lapses.'"[4]  AR 405.  He reported severe panic episodes which started after he lost his job in 2010, mood lability, paranoia, auditory hallucination (hearing his name being called), difficulty concentrating, angry outbursts and low frustration tolerance.  AR 24, 405.  According to Gonzalez, he was out on bail.[5]  AR 407.  Gonzalez was assessed as being well groomed with normal eye contact and speech, unimpaired memory and intellectual functioning, intact concentration, above average fund of knowledge and intact judgment.  His mood was irritable and anxious with a known stressor, and his affect was appropriate.  He reported poor impulse control but his behavior was appropriate during the assessment.  AR 408.  Gonzalez was diagnosed with major

22

23
24
25

_____

[3]  The current Diagnostic and Statistical Manual of Mental Disorders ("DSM") no longer uses GAF scores.  Previously, the GAF scale took into account psychological, social and occupational functioning.  A GAF of 41-50 indicated serious symptoms or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).  DSM IV-TR 34 (4th ed.).

26

[4]  Gonzalez denied illicit drug use past or present.  AR 406.

27
28

[5]  At a hearing, Gonzalez said he went to jail because "some guy made me mad and they said I kidnapped him."  AR 692.  Gonzalez said he was housed in the mental ward.  *Id.*

depressive disorder, recurrent, severe with psychotic features and rule/out bipolar disorder.  His GAF was 50.  AR 24, 408.  In May 2012, a medication note indicated Gonzalez reported feeling much better.  24, 410.  He still had some racing thoughts, his sleep varied and his stressors continued.  Gonzalez had direct eye contact, normal speech, appropriate affect and appeared goal directed.  He denied auditory or visual hallucinations.  AR 410.  After the hearing, Gonzalez submitted a letter from Dr. Martinez at the mental health center.  As the ALJ observed, the letter provided minimal information and did not include any treatment notes.  AR 24, 673 (noting that Gonzalez was treated for a "mental health disorder" with medication that "causes drowsiness during the day").

An examining psychiatrist, Dr. Parikh, evaluated Gonzalez in March 2012.  Gonzalez complained of depression, anxiety and mood swings.  He reported past drug and alcohol abuse, and legal problems.  AR 24, 371-72.  Dr. Parikh observed that Gonzalez was attentive and could focus attention during the evaluation.  He had normal speech with a good vocabulary.  His mood was depressed and anxious, but his affect was brighter.  He denied feeling hopeless or helpless.  His thoughts were logical, and he denied hearing voices or seeing visual hallucinations.  His memory was intact and his thought content was normal.  He could not perform serial seven subtractions from 100 or double digit arithmetic calculations.  AR 374-76.  Dr. Parikh diagnosed mood disorder, not otherwise specified; alcohol dependence, past drug abuse and bipolar disorder by history.  His GAF was 70.[6]  Dr. Parikh found no mental limitations.  AR 24-25, 376-77.

In March 2013, Gonzalez was evaluated by an examining psychologist, who found that Gonzalez put forth inadequate effort and exaggerated his symptoms.  AR 25.  Gonzalez's attorney argued that the report should be given

---

[6]  A GAF of 61-70 indicates some mild symptoms or some difficulty in social, occupational or school functioning (e.g., theft within the household), but generally functioning pretty well with some meaningful interpersonal relationships.  DSM IV-TR at 34.

7

no weight.  The ALJ did not agree with all of the attorney's reasons but gave no weight to the functional assessment because Gonzalez appeared to be more functionally limited that the report indicated.  The ALJ also gave no weight to Dr. Parikh's functional assessment.  AR 26.

The ALJ's finding that Gonzalez had minimal and conservative mental health treatment is supported by substantial evidence.  Gonzalez's treatment began around the time he applied for benefits.  Nothing in the record indicates that Gonzalez has sought or received more than conservative treatment.  AR 22.

The ALJ's finding as to activities of daily living is supported by substantial evidence.  The ALJ noted that mental capabilities required to perform Gonzalez's activities were similar to that necessary for employment.  Gonzalez is able to take care of his own hygiene, take the children to and from school, take the children to the park, perform light household chores and play video games during the day.  AR 22, 373-74, 700-01, 704.

When, as here, the ALJ's credibility finding is supported by substantial evidence, the court "may not engage in second-guessing."  *Thomas*, 278 F.3d at 959.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed and that judgment be entered for the Commissioner.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  January 5, 2016

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

8